## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| JAY HOWSER, </br> An individual, </br> </br> Plaintiff, </br> </br> v. </br> </br> FORUM NATIONAL INVESTMENTS LTD. </br> An Ontario, Canada corporation, </br> </br> DAN CLOZZA, </br> An individual, </br> </br> And </br> </br> MARTIN TUTSCHEK, </br> An individual, </br> </br> Defendants. | JURY DEMAND </br> </br> Case no. |

## COMPLAINT

COMES NOW Plaintiff Jay Howser, by and through his undersigned counsel, and for his Complaint against Defendants Forum National Investments Ltd., Dan Clozza, and Martin Tutschek, states to the Court as follows:

## THE PARTIES

1. Plaintiff Jay Howser ("Howser") is an individual residing in Davidson County, Tennessee.

2. Defendant Forum National Investments Ltd. ("Forum National") is an Ontario, Canada corporation with its principal place of business in British Columbia, Canada.

3. Defendant Dan Clozza ("Clozza") is an individual residing in British Columbia, Canada.

1

4. Defendant Martin Tutschek ("Tutschek") is an individual residing in British Columbia, Canada.

## JURISDICTION

5. The relief sought by Plaintiff herein exceeds $75,000.

6. Plaintiff and Defendants are of diverse citizenship.

7. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332(a)(2).

## VENUE

8. Plaintiff's domicile is located in this judicial district.

9. Plaintiff's cause of action accrued in and the debt sued upon arose in this judicial district.

10. Venue is proper in this Court pursuant to 28 U.S.C. §§1391(b)(2).

## FACTS COMMON TO ALL COUNTS

11. At all times relevant hereto Plaintiff Howser is an individual residing in Davidson County, Tennessee.

12. Defendant Forum National specializes in the provision of life insurance conversions and settlements as well as travel services through a related subsidiary, Spirit Yacht Charters Ltd. ("Spirit").

13. Defendant Clozza is the Chief Executive Officer and President of Defendant Forum National.

14. Defendant Tutschek is the Chief Financial Officer of Defendant Forum National.

15. This Complaint arises from those certain February 2011 Secured Convertible Debenture Subscription Agreements ("Subscription Agreements") entered into by and between Howser and Forum National.

2

16. A true and correct version of the Subscription Agreements are attached hereto as Exhibit 1 and are incorporated herein by reference.

17. The Subscription Agreements involved debentures with a face value of $450,000. Each debenture could be purchased by investors in "units", with each unit having a subscription price of $50,000.

18. Howser bought two such units for a total price of $100,000.

19. Howser executed the Subscription Agreements, but never received countersigned copies bearing the signature of Defendant Clozza.

20. Upon information and belief, Defendant Clozza executed the Subscription Agreements.

21. Howser paid all amounts necessary to maintain the debentures.

22. The debentures were secured by 5% interests in two United States Irrevocable Life Insurance Trusts ("ILITs"). The death benefits for these ILITs totaled $9,000,000.

23. The benefits of these ILITs were split in the following manner:

    a. $5,000,000 death benefit on the Witz ILIT; and

    b. $4,000,000 death benefit on the McGlamery ILIT.

24. In June 2012, Defendants Forum National, Clozza, and Tutschek became the subject of an investigation by the British Columbia Securities Commission ("BCSC") regarding the above ILIT investments.

25. In response to investor concerns over the BCSC's investigation, Forum National offered the opportunity to restructure the investment to separate it from Forum National.

26. In essence, the debenture units were to be surrendered to Forum National and Forum National would confirm the ownership interests of the investors in the ILITs directly in the same percentage as they did under the debenture structure.

3

27. Howser accepted Forum National's restructuring offer.

28. Howser and Forum National's restructuring agreement was memorialized in that certain Agreement to Ammend [sic] Secured Convertible Debenture ("Amended Agreement").

29. Similar to the Subscription Agreement, Howser never received a countersigned copy of the Amended Agreement.

30. Upon information and belief, Forum National executed the Amended Agreement.

31. The Amended Agreement expressly indicates Forum National had been paying a shortfall in the required monthly payments of roughly $80,000 at the time of the amendment.

32. However, Howser was never advised there was any shortfall attributable to the units he owned and Forum National never requested any additional funds from him at the time of the amendment.

33. A true and correct copy of the Amended Agreement is attached hereto as Exhibit 2 and is incorporated herein by reference.

34. On April 1, 2014, Howser bought an additional unit in this investment, raising his total units owned to three (3). This represented a collective 15% ownership of the ILITs at issue.

35. To obtain this third unit, Howser paid past due premiums in the amount of $19,956.16.

36. In September 2014, Torrey Pines Services, LLC, took over servicing of the ILITs and the collecting of premiums for same. Howser made all requested premium payments through Fall 2016.

37. In Fall 2016, CHW Consulting, Inc. ("CHW"), took over servicing of the ILITs and the collecting of premiums for same. CHW was operated by a former employee of Forum National. Again, Howser made all requested premium payments.

4

Case 3:24-cv-00303   Document 1   Filed 03/14/24   Page 4 of 15 PageID #: 4

38. Between 2017 and 2019, the holders of 2.9 units of the ILITs failed to pay their requested premiums. Howser continued to pay all premiums and, as a result of the others' nonpayment of same, saw his interest in the investment increase to 16.374269% of the 17.1 remaining units.

39. No discussions were had between Forum National and Howser regarding any additional payments for the purchase price of these additional units. As the previous owners had already paid the purchase price for same to Forum National, any payment by Howser would result in Forum National receiving double payment for the transferred units.

40. At all times relevant herein, it was understood by Howser that he was simply assuming these additional units by paying the premiums the prior owners could no longer pay.

41. In June 2019, all investors in the venture agreed to sell the Witz ILIT for the sum of $1,058,282.54 net of transactional expenses.

42. Howser's share of these sales proceeds was to total $173,286.03.

43. At the time the sales proceeds were distributed, CHW informed Howser that he was indebted in the amount of $30,000 to Spirit, the previously noted travel subsidiary of Forum National.

44. The alleged $30,000 debt stems from Howser's company JHC Marine, LLC's ("JHC") purchase of a yacht in Ft. Lauderdale, Florida.

45. Howser is the sole member and manager of JHC.

46. Defendant Clozza controlled the primary operations of Spirit.

47. Clozza and Spirit expressed an interest in chartering JHC's yacht if it was moved to Cabo San Lucas, Mexico.

48. The cost of moving the yacht was $75,000.

5

49. Spirit agreed to pay JHC $30,000 of the $75,000 in costs to relocate the yacht to Cabo San Lucas in exchange for the promise by Spirit to charter same upon its arrival.

50. Despite the promise, Spirit never chartered the boat.

51. As a result of these actions, Howser received proceeds in an amount $30,000 less than he was contractually entitled to from the sale of the Witz ILIT.

52. In addition, Howser, through JHC, incurred thousands of dollars in expenses relating to the relocation of the yacht to Cabo San Lucas, as well as further expenses to return it to its original location following Spirit's non-chartering of same.

53. Following the sale of the Witz ILIT, Howser still owned units corresponding to the McGlamery ILIT.

54. In early 2022, the $4,000,000 death benefit of the McGlamery ILIT policy was paid to CHW.

55. Pursuant to his interest in this ILIT, Howser was owed a gross death benefit of $654,970.

56. The proceeds of the McGlamery ILIT policy were disbursed to all owners of same except for Howser.

57. On June 1, 2022, CHW issued a statement to Howser, reducing the proceeds due to him by $125,000 (plus other associated expenses) and enclosing a draft Release form for his execution.

58. CHW claimed the $125,000 reduction represented $25,000 due to one David P. Crabtree and two $50,000 debenture cost items.

59. Despite CHW's assertions, Howser was not obligated to pay Crabtree for the alleged expense.

60. Despite CHW's assertions, Howser had covered the debenture cost items by his trading back of stock he previously held in Forum National.

61. Because Howser was not indebted to Crabtree and had already covered the other expenses through his stock trade, he was not obligated to pay the $125,000 fee.

62. Howser, in an attempt to dispute the $125,000 charge, declined to sign the Release and opted to contact CHW.

63. CHW's registered agent refused to speak with him.

64. Howser proceeded to contact Defendant Clozza to discuss the matter.

65. Clozza directed Howser to speak with Defendant Tutschek, who confirmed Forum National's claim of a $125,000 debt owed by Plaintiff.

66. During their discussions with Howser, Defendants Clozza and Tutschek levied additional allegations of funds due from Plaintiff to CHW relating to various yacht expenses while the boat was in Cabo San Lucas as well as expenses from ancillary business dealings between the parties.

67. Howser disputes the accuracy of these additional charges alleged by CHW and denies any obligation for same.

68. To date, Howser has not received his portion of the McGlamery ILIT policy, resulting in a loss of $654,970 in gross benefits.

69. In addition to the ILIT investment, Howser owns shares in Forum National.

70. Initially, Howser owned 1,000,000 Forum National shares.

71. When the company became riskier, he traded 950,000 shares for a 2003 Cruisers Yacht.

72. After two (2) years, Howser returned the Cruisers Yacht to Forum National, having been induced to do so by Forum National's and Dan Clozza's representations that

7

Howser would be reimbursed for same, either through the returning of his 950,000 shares or in the form of a cash payment.

73. Upon information and belief, Forum National sold this yacht to a third party unknown to Howser for $172,000 CAD. Howser did not receive any portion of these proceeds. Instead, Defendant Clozza took this money from Forum National and kept same for his personal use.

74. As a result, Howser has not been adequately compensated for the 950,000 relinquished shares of Forum National.

## COUNT 1 – BREACH OF CONTRACT
**(Against Defendant Forum National Only)**

75. Plaintiff incorporates the allegations of paragraphs 1 through 74 above as if fully set forth herein.

76. As more fully set forth above, Howser and Defendant Forum National entered into the Subscription Agreement and corresponding Amended Agreement to secure Howser's debenture interest in the Witz and McGlamery ILITs.

77. Howser has fully performed pursuant to the agreements in remitting the initial purchase price for the ILIT units as well as staying current on all required premiums.

78. Forum National has failed to perform pursuant to the agreements by failing to remit payment for Howser's entire share of the ILIT policies.

79. Forum National has thereby breached each of the agreements.

80. As a direct and proximate result of Forum National's breaches, Howser has been damaged in the amount of $684,970.

81. Howser has incurred and continues to incur attorneys' fees and costs in connection with its pursuit of recovery hereunder.

WHEREFORE Howser prays this Court enter Judgment against Forum National in the amount of $684,970 together with pre-judgment interest, his reasonable attorneys' fees, litigation costs, and such other and further relief as the Court may deem just and appropriate under the circumstances.

## COUNT 2 – BREACH OF FIDUCIARY DUTY
### (Against Defendants Clozza and Tutschek)

82. Plaintiff incorporates the allegations of paragraphs 1 through 74 above as if fully set forth herein.

83. As the managers of Howser's debenture investment as well as members of the board of directors of Defendant Forum National, for which Howser is a shareholder, Defendants Clozza and Tutschek owed Howser a common law fiduciary duty of loyalty in the performance of their obligations as investment managers and members of Forum National's board of directors.

84. Clozza breached his fiduciary duty of loyalty in the performance of his obligations in the following respects:

   a. Failing to advise Howser of Forum National's roughly $80,000 shortfall in the payments made relating to Howser's units in the ILITs upon the execution of the Amended Agreement;

   b. Failing to request from Howser additional funds owed as part of Forum National's restructuring agreement upon the execution of the Amended Agreement;

   c. Withholding $30,000 from Howser's contractually owed payout from the sale of the Witz ILIT due to a wholly unrelated debt owed by JHC to Spirit;

   d. Reducing Howser's contractually owed payout from the death benefit of the McGlamery ILIT by $125,000 due to dubious and previously undisclosed expenses allegedly incurred by Forum National;

e. Failing to inform Howser of the 10% "Forum Payment" fee that was to be skimmed from his share of the McGlamery ILIT death benefits; and

   f. Failing to reimburse Howser for his surrender of 950,000 Forum National shares and Defendant Clozza's subsequent conversion of same for his personal gain.

85. Tutschek breached his fiduciary duty of loyalty in the performance of his obligations in the following respects:

   a. Acquiescing in Forum National and Clozza's scheme to reduce Howser's payout from the McGlamery ILIT death benefit by $125,000 in violation of the Subscription Agreements and Amended Agreement. Tutschek affirmed the dubious charges upon Howser's inquiry.

86. Clozza's and Tutschek's breaches were material.

87. As a direct and proximate result of Clozza's and Tutschek's breaches, Howser was damaged.

WHEREFORE Howser prays this Court enter Judgment against Clozza and Tutschek in an amount to be proven at trial together with pre-judgment interest, his reasonable attorneys' fees, litigation costs, and such other and further relief as the Court may deem just and appropriate under the circumstances.

## COUNT 3 – MONEY HAD AND RECEIVED
### (Against Defendant Forum National)

88. Plaintiff incorporates the allegations of paragraphs 1 through 74 above as if fully set forth herein.

89. Pursuant to the Subscription Agreements and Amended Agreement, Plaintiff paid the initial sum of $150,000 to purchase three units in the Witz and McGlamery ILITs. Plaintiff continued to pay all premiums owed in a timely manner up and to the date such policies were to be paid out.

90. The proceeds from the sale of the Witz ILIT were due in full to Howser upon the sale of same.

91. The proceeds from the death benefit of the McGlamery ILIT were due in full to Howser upon Forum National's receipt of same.

92. Howser has made demand upon Forum National for the payment of the proceeds owed to him from the Witz and McGlamery ILITs.

93. Despite demand, Forum National has failed and refused to make full payment of the monies owed to Howser. Specifically, Forum National has withheld the following:

   a. $30,000 due and owing from the sale proceeds of the Witz ILIT; and

   b. $654,970 due and owing from the death benefit of the McGlamery ILIT.

94. The $684,970 in funds from the Witz and McGlamery ILITs withheld by Forum National is Howser's money.

95. Under principles of equity, Forum National should not, in good conscience, retain these funds and should be required to pay out same to Howser.

WHEREFORE Howser prays this Court enter Judgment against Forum National in the amount of $684,970 together with pre-judgment interest, his reasonable attorneys' fees, litigation costs, and such other and further relief as the Court may deem just and appropriate under the circumstances.

### COUNT 4 – MONEY HAD AND RECEIVED
**(Against Defendant Clozza)**

96. Plaintiff incorporates the allegations of paragraphs 1 through 74 above as if fully set forth herein.

97. Upon the representations of Defendant Clozza, Plaintiff remitted 950,000 shares of stock, as well as the noted Cruisers Yacht, to Forum National in exchange for the promise of future reimbursement.

11

98. Despite Clozza's representations, Plaintiff received no reimbursement for his remittance of the shares or Cruisers Yacht.

99. Upon information and belief, instead of reimbursing Howser for his shares and the Cruisers Yacht, Clozza sold the boat and converted the proceeds of same from Forum National to himself for his own personal gain.

100. Howser has made demand upon Clozza for payment of his share of these sale proceeds.

101. Despite demand, Clozza has failed and refused to make any payments to Howser in connection with the surrendering of the shares and sale of the Cruisers Yacht.

102. A portion of the proceeds from the sale of the Cruisers Yacht is Howser's money.

103. Under principles of equity, Clozza should not, in good conscience, retain same and he should be required to repay same to Howser.

WHEREFORE Howser prays this Court enter Judgment against Clozza in an to be determined at trial, together with pre-judgment interest, his reasonable attorneys' fees, litigation costs, and such other and further relief as the Court may deem just and appropriate under the circumstances.

## COUNT 5 – UNJUST ENRICHMENT
### (Against Defendants Forum National and Clozza)

104. Plaintiff incorporates the allegations of paragraphs 1 through 74 above as if fully set forth herein.

105. Defendants Forum National and Clozza failed to adequately reimburse Plaintiff for his relinquishing of 950,000 Forum National shares and subsequent returning of the Cruisers Yacht Plaintiff had received for same.

106. Specifically, Forum National retained the $172,000 CAD ($128,423.80 USD) of proceeds obtained from the sale of the Cruisers Yacht.

107. Forum National also retained the value of the 950,000 shares relinquished by Plaintiff, each with an estimated value of $1 per share.

108. Clozza furthered this scheme by converting the funds from the sale of the Cruisers Yacht for his own personal gain.

109. Forum National and Clozza were enriched by the receipt of these benefits provided by Plaintiff.

110. Forum National's and Clozza's enrichment came at the expense of Plaintiff.

111. It would be unjust to permit Forum National and Clozza to retain the benefits reaped from Plaintiff's surrender of the 950,000 shares and Cruisers Yacht.

WHEREFORE, Plaintiff prays this Court enter Judgment against Forum National and Clozza in the amount of $128,423.80 together with pre-judgment interest, his reasonable attorneys' fees, litigation costs, and such other and further relief as the Court may deem just and appropriate under the circumstances.

## COUNT 6 – FRAUD
### (Against All Defendants)

112. Plaintiff incorporates the allegations of paragraphs 1 through 74 above as if fully set forth herein.

113. Pursuant to the Subscription Agreements and Amended Agreement, Defendant Forum National represented to Howser that he would be entitled to his share of the payout proceeds received in connection with the Witz and McGlamery ILITs.

114. Forum National made these representations by and through its chief executive, Defendant Clozza.

115. Despite their representations, Forum National and Clozza knew the representations made to Howser were false.

13

116. Howser, in reliance on these representations, remitted payment for three units in the above-noted investment and maintained timely payment of premiums until each respective ILIT was to be paid out.

117. At the time sale proceeds from the Witz ILIT were to be paid to Howser, Forum National, by and through Clozza, refused to honor the Subscription Agreements and Amended Agreement. Instead, Clozza took this chance to saddle Howser's payment with a wholly unrelated debt of $30,000.

118. At the time death benefit proceeds from the McGlamery ILIT were to be paid to Howser, Forum National applied a dubious charge of over $125,000 to the funds in addition to the previously undisclosed "Forum Payment" fee. Clozza, together with Defendant Tutschek, represented to Howser that these funds were related to past debts owed by Howser. These representations were made, despite Clozza's and Tutshcek's knowledge of their falsity.

119. Due to Howser's refusal to accept Forum National, Clozza, and Tutschek's dubious expenses, he has yet to receive his share of the McGlamery ILIT's proceeds due to him, a gross total of $654,970.

120. As a direct and proximate cause of the actions of the Defendants, Howser has lost most of the money he has invested in the ILITs over the past twelve (12) years.

121. As a result of Defendants' refusal to pay Howser his portion of the funds due to him from the ILITs, Howser has lost out on over $684,970.

122. The representations made by Forum National, Clozza, and Tutschek in connection with the Witz and McGlamery ILITs were false at the time they were made.

123. Forum National, Clozza, and Tutschek knew the representations were false at the time they made them.

124. Forum National, Clozza, and Tutschek intended for Howser to rely upon the representations.

125. Howser had a right to rely on the representations.

126. Howser did rely on the representations.

127. Howser's reliance on the representations was reasonable.

128. As a direct and proximate cause of Howser's reasonable reliance, he has been damaged as set forth above.

WHEREFORE Howser prays this Court enter Judgment against Forum National, Clozza, and Tutschek in the amount of $684,970 together with pre-judgment interest, his reasonable attorneys' fees, litigation costs, and such other and further relief as the Court may deem just and appropriate under the circumstances.

Respectfully submitted,

**TUNE, ENTREKIN & WHITE, P.C.**

/s/Robert L. DeLaney
Robert L. DeLaney    (BPR #004319)
500 11th Avenue North, Suite 600
Nashville, TN 37238
(615) 244-2770
rdelaney@tewlawfirm.com
*Attorney for Plaintiff*